

# In The United States District Court For The
# District of Delaware

BRUCE M. RICKARDS,                    :
                                      :    C.A. No. _ 0 6 _ 7 9 9 _
                    Plaintiff,        :
                                      :
                                      :
          vs.                         :
                                      :
                                      :
EASTERN SHORE CHICKEN FARM            :
LLC, a limited liability company of the :
State of Delaware;                    :
                                      :
                    Defendant.        :

### Notice of Removal

Now Here Come(s), Duc Ngo, and Tina Ngo due hereby constitutionally Petition, this High Federal U.S. Const. Art III. Court of Equal Justice under – law; To immediately spontaneously;

### REMOVE

State of Delaware Superior Court in and for Sussex County Civil Docket No. 06L – 11 = 032 RFS. Enclosed: Plainiff's Complaint filed November 17, 2006, Defendant's Answer to Plaintiff's Complaint, which is attached to Plaintiff's **INITIAL - <u>Unconscionable</u>** "Agreement of Sale" dated June 30, 2005, which **does not confirm thereon, who it was Prepared by, which is also unconscionable**.

## Ground(s) for R E M O V A L

{01}. We, the superficial – manifest defendant(s); Duc Ngo, and Tina Ngo are of proud **VIETNAMESE DESCENT**,. As we are **100% legal** in these United States of America,. We still cannot assure 100% fairness, and impartiality,. As both Federal and State Law Mandate,. The Track Record of Delaware court(s), as to minoritie(s),. Is de facto, if not defunct at best,. As we hereby, move as viable defendant(s) for Removal under these viable Rational basis test cognizable self – executing, Proximate justa causa(s)

(a).    Title 28 U.S.C. Section 1443,. We are truly in good – faith, constitutionally – petitioning, for Removal as a matter of law due to we cannot as Vietnamese descendant(s) be assured against prohibited wrongful unconstitutional {Arbitrary and Capricious} Malfeasance Act(s) of known Notorious Racist - like judge – ship(s) throughout the Delaware Court System,. In which we cannot be compelled to be legally commingled,. As a matter of Law,.

(b).    28 U.S.C.A. Section 1446. "Manifest" "Notice of Removal,."

(c).    42 U.S.C.A. Section 1985(3). Wrongful - continuing violation(s) of our Civil Right(s),. Due to wrongful, on the Record intentional denial(s) of our Inalienable Civil and Constitutional Right's as to not being **EXPLITED** as we were due to our RACE we Certainty, believe that the State Court will side with **Mr. Rickard(s) A WHITE – MAN** who is **WELL – OFF financially**,. Per se

2

And **WEL KNOWN** in the community.

*1343*

(d).    28 U.S.C.A Section ~~1443.~~ We are being unconstitutional and illegally -

fundamentally, intentionally – wrongfully "DENIED" our inalienable libertie(s) of

the pursuit of happiness,. As to strive to be SUCCESSFUL BUSINESS

OWNER(S),. Please see some of the unlawful Depraved – Mind Illicit – Collusion

below;

1.    " **Property**" -- Unconscionable and breached issue, Mr. Bruce M. Rickards,

through his own **ACTIONABLE NEGLIGENCE**, illegally sold Mr. Duc

Ngo and Tina Ngo real estate property of Tax Map No. **Dist: 533**

**Map: 5.00 parcel: 0044**, IN the INITIAL "Agreement of Sale"

**AGREEMENT** dated June 30, 2005. This property is owned by Mrs.

Marilyn L. Wood and Mr.. Robert W. Wood **and not** Mr. Bruce M.

Rickards. See attached **Exhibit A and B, THEN** compare to the **INITIAL**

"Agreement of Sale" agreement dated June 30, 2005, thereon page one (1)

under **"WITNESSETH:"** number one (1) "Property". Furthermore, in this

"Agreement of Sale", see pages three (3) and four (4), term number five (5)

**"Deed and Title"** - it states, " In the event title is not a good, marketable

fee simple title, **free and clear** of all liens and encumbrances, as aforesaid,

Purchaser may **TERMINATE** this Agreement and thereupon all payments

made by Purchaser pursuant to this contract **shall be returned** to him

forthwith and the parties hereto shall be under no further obligation

hereunder". PLEASE TAKE LEGAL NOTICE: Therefore, for one reason,

3

Due Ngo and Tina Ngo, are demanding to be paid back to them, their **ONE**

**MILLION TWO HUNDRED THOUSAND DOLLARS**

**($ 1, 200, 000.00)** and any other money and/or items under the law, at

this point in time.

2.    "Inclusions/Completion of renovations" Unconscionable and breached issue,

Mr. Bruce M. Rickards, a white man business through his own

**ACTIONABLE NEGLIGENCE**, illegally sold three house **trailers to be**

**lived in**, to Duc Ngo and Tina, in the State of Delaware, without titles. Mr.

Bruce M. Rickards also breached the June 30, 2005 unconscionable agreement

by not giving, bill of sales to Duc Ngo and Tina Ngo, for the three house trailers

**as promised** in this **AGREEMENT**. Furthermore, Mr. Bruce M. Rickards in his

"Bill Of Sale" dated October 26, 2005, did not include an serial Number for the

listed "Equipment", this bill of Sale is Unconscionable to Duc Ngo and Tina

Ngo. **See attached Exhibit C**, and compare to this June 30, 2005, unconscionable

agreement page one (1) tern number two (2).

3.    There is an agent/representative of poultry **CONGLOMERATE** Perdue

indirectly / directly ENTANGLED in this; based out of Salisbury, MD.

This company knows Mr. Bruce M. Rickards. This agent/representative of

this company for some reason allow me, (Duc Ngo) to use a soap for

chicks, which PERDUE **did not** provide, therefore, PERDUE's

agent/representative allowed me, (Duc Ngo) to believe that as long as supplies'

4

ingredients are the same, this practice is proper. Furthermore, now PERDUE
wants me, (Duc Ngo) to sign a PERDUE document which will place this
**ACTIONABLE NEGLIGENCE**, only on me, (Duc Ngo) and not
PERDUE's agent/representative, this attempted act is wrong and I, (Duc
Ngo) refused to sign. **See attached Exhibit D**, also **see attached Exhibit E**, a
Deed from Mr. Bruce M. Rickards, wanting Duc Ngo and Tina Ngo to sell
Eastern Shore Chicken Farm, LLC, back to him for the TOTAL SUM OF
ONE (1) DOLLARS. **For the Record, Mr. Bruce M.**
_is_
**Rickards in not a Blood Kin to the Ngo's family,**

**therefore, this act of one (1) dollars may be for tax**

**issues.** *All acts in this paragraph are before*

*December 28, 2006.*


4.     Mr. Bruce M. Richards, at first knew, that the only way that, Duc Ngo and
       Tina Ngo can **afford to pay** for Eastern Shore Chicken Farm LLC, is
       through his Unconscionable June 30, 2005, "Agreement of Sale" agreement
       and through PERDUE's Poultry Producer Agreement and therefore,
       understood the very, very high RISK, for Duc Ngo and Tina Ngo. Mr. Bruce
       M. Rickards and/or his agents goes onto Eastern Shore Chicken Farm LLC,
       looking for problems this is Unconscionable, an independent agent would

5

be needed here, free from the control of Mr. Bruce M. Rickards'

**INFLUENCE**. Mr. Bruce M. Rickards  after looking for problems on

Eastern Shore Chicken Farm LLC, filed a lawsuit on November 17, 2006,

but Duc Ngo and Tina Ngo was not served for some reason until

December 12, 2006. This lawsuit allows Mr. Bruce M. Rickards in his

Unconscionable,    June 30, 2005, "Agreement of Sale" agreement thereon page

six (6) under term number fifteen (15) "Seller Default",  to claim, **"... and**

**Purchaser  shall  not  also  be  in  default,..."**


5.    I, (Duc Ngo) was told that, Mr. Bruce M. Rickards and PERDUE are

planning to put chicks in Eastern Shore Chicken Farm LLC's 26 chicken

houses without Duc Ngo and Tina Ngo's **approval** and **No  Court  Ruling**,

as to date, December 28, 2006, if, true by record of action and/or witnesses,

therefore this act is **UNCONSTITUTIONAL**.

Duc Ngo

Tina Ngo
P.O. Box 1374
Ocean View,  Delaware  19970
**(New  address – for safety reasons)**

**DATE**  Dec- 29-06

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Mr. Bruce M. Rickards | : |
| | :     C.A. No.: _____ |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| Eastern Shore Chicken Farm LLC, | : |
| A limited liability company of the | : |
| State of Delaware; | : |
| | : |
| Defendant. | : |

**AFFIDAVIT OF Duc Ngo and Tina Ngo**

UNITED STATE DISTRICT COURT :

                : SS.

DISTRICT OF DELAWARE     :

The, preceding – indelible truthful – statement(s), in the " Notice of Removal " are true to the best of my knowledge and belief(s); of; Duc Ngo and Tina Ngo and are in full vehement compliance / Compliance(s), Here-with,/ Here – under; 28 U.S.C.A. Section 1746.

_____       Dec-29-06 .
Duc Ngo                           Date

_____       Dec 29 - 06
Tina Ngo                          Date

## CERTIFICATE OF SERVICE

I hereby certify that two true copies of the " Notice of Removal " have been certified mailed this ⤳ 29 day of December 28, 2006, to counsel for Plaintiff at the following addresses:

United States District of Delaware
Bogg'(s) Federal Bldg.,
844 N. King Street
Lockbox 18
Wilmington, DE 19801 – 3517

Eric C. Howard, Esquire
Wilson, Halbrook & Bayard, P.A.
107 West Market Street
P.O. Box 690
Georgetown, DE 19947
Certified Mail No. 7005 3110 0000 1602 7672

and that counsel and the United States District Court of Delaware has received these two copies
by Duc Ngo and Tina Ngo

# Exhibit A

Exhibit A

```
5722SS1 VSR3M0 040528          Print Key Output          SI024618                    12/08/06        Page  1
                                                                                                     15:01.38
Display Device . . . . . :  WP
User  . . . . . . . . . :  RCD

12/08/06 15:01:35                    SUSSEX COUNTY COUNCIL                                   WP
P100770                          Name/Map# Reference-Assess                                  RCD

DIST:  533   MAP: 05  .  00      PARCEL:  0044  .  00  UNIT:                       TAXABLE       ACTIVE
ROCO                                                                              N/RT  92
MARILYN L & ROBERT W                                                              1300 * W/RT 385
                                                                                 W/IMP

16 BITTERSWEET DR
HAGERSTOWN
MC/BS/740    6714              COUNCILMAN: MR PHILLIPS                    16.20 ACRES
TRANSFER # 'S    :  181726
D/A PROX & PAGE  :  0000 000                     PROP. EXEMPT'S :
PROPERTY CODE... :  P                            DISABILITY     :
LAND CLASS...... :  AH                           ASSIGNMENT     :
SCHOOL DIST..... :  1                            LEASE          :
TOWN CODE....... :                               COMMON ELEM.   :
CAPTATION....... :  0 CAPS  0 EXM                CONDO UNIT     :         FIRE.:  76  00  00
PLOT BOOK & PAGE :  000  000
APPRAISAL          000     4,800 (LAND)          FUND: (IMPROVEMENT)
                                    2,200        (RESIDENTIAL APPRASIAL)
LAST CHANGED       3/20/92          4,100 (RESIDENTIAL, APPRASIAL)     CODE:
F3=EXIT F13=NEW MAP                             7,000 (TOTAL)          F6=PERMITS
F24=MORE KEYS  F12=RETURN     F1=HELP           F2=TAXES
                              F10=POP UPS
```

# Exhibit B

*Exhibit*

*B*

NO LIEN SEARCH OR TITLE SEARCH WAS DONE AS NONE WAS REQUESTED.

BOOK **1048** PAGE **100**

MORRIS, NICHOLS, ARSHT & TUNNELL
ATTORNEYS AT LAW
GEORGETOWN, DELAWARE 19947

## This Deed, made this        day of  February      19 81 by

and between: MARILYN L. WOOD and ROBERT W. WOOD, her husband,

of 4803 Ritchie Highway, Baltimore, Maryland 21225,

parties of the first part,

- AND -

MARILYN L. WOOD and ROBERT W. WOOD, her husband, of 4803
Ritchie Highway, Baltimore, Maryland 21225, as JOINT TENANTS
with right of survivorship, and not as tenants in common,

parties of the second part;

Witnesseth, that the said parties of the first part, for and in
consideration of the sum of ONE DOLLAR ($1.00)---------------

------------------------------ , current lawful money of the
United States of America, the receipt whereof is hereby acknow-
ledged, hereby grant  and convey  unto the said parties of the
second part,    their heirs    and assigns,

ALL that certain piece, parcel or lot of land situated,
lying and being near Roxana, <u>Baltimore Hundred</u>, Sussex
County, Delaware, and being more particularly described as
follows, to wit:

BEGINNING at a monument on the Northerly right-of-way
of Sussex County Road #92 and 25 feet distant from the
centerline of said road, said monument being a corner for
lands of K. Melson; thence by and with the lands of K.
Melson along the centerline of a ditch and the centerline
extended, North 13 degrees 41 minutes 05 seconds East,
243.05 feet to a point; thence still with lands of K. Melson
along the center of the ditch, North 16 degrees 50 minutes
28 seconds East, 390.07 feet to a point; thence on the same
course 101.00 feet to a monument, said monument being a
corner for lands of Melson and Robert McMullen; thence by
and with the lands of McMullen South 73 degrees 37 minutes
31 seconds East 247.17 feet to a point in the centerline of
a drainage ditch being a corner for lands of McKinley Tingle;
thence by and with the centerline of the ditch and along the
lands of Tingle, South 72 degrees 22 minutes 43 seconds
East, 1660.59 feet to a point in the centerline of the
ditch, said point being a corner for lands of Tingle and
Stevens; thence with the lands of Stevens, South 16 degrees
06 minutes 52 seconds West, 792.63 feet to a monument (there
being a witness monument on this line at 7.84 feet from the
centerline of the ditch); thence still with the lands of
Stevens, South 19 degrees 52 minutes 10 seconds West, 332.24
feet to a monument in the Northerly right-of-way of Sussex
County Road #92 and 25 feet distant from the centerline of
the said road; thence by and with the right-of-way of County
Road #92 the following courses and distances: North 67
degrees 34 minutes 57 seconds West, 153.90 feet, North 64
degrees 03 minutes 21 seconds West, 214.59 feet, North 60
degrees 16 minutes 06 seconds West, 1458.79 feet, North 52
degrees 52 minutes 36 seconds West, 106.24 feet to the place
of beginning, containing 41.605 acres, more or less, as
shown on a survey prepared by Atlantic Engineers, Inc.,
registered surveyors, dated June 9, 1970, and revised June
19, 1970.

# Exhibit C

*Exhibit C*

## BILL OF SALE

**KNOW ALL MEN BY THESE PRESENTS** that for and in consideration of the total sum of **ONE HUNDRED THREE THOUSAND FIFTY and 00/100 DOLLARS ($103,050.00)**, the receipt and sufficiency of which are hereby acknowledged, **BRUCE M. RICKARDS** hereby grants, bargains, sells, transfers, conveys, assigns, delivers and sets over unto **EASTERN SHORE CHICKEN FARM, LLC**, a Delaware limited liability company, its successors and assigns, all the items of tangible personal property as appear on Exhibit "A" attached hereto and made a part hereof.

**TO HAVE AND TO HOLD** unto **EASTERN SHORE CHICKEN FARM, LLC**, a Delaware limited liability company, its successors and assigns, for their proper use and behalf forever.

**AND** the said **BRUCE M. RICKARDS** does hereby for himself, his heirs, executors, administrators, successors and assigns, represent and warrant to **EASTERN SHORE CHICKEN FARM, LLC**, a Delaware limited liability company, its successors and assigns, that it has the full right to sell and transfer the above described property and that such property is free and clear of all debts, liabilities, obligations and encumbrances.

**IN WITNESS WHEREOF**, the said **BRUCE M. RICKARDS** has executed this Bill of Sale by its officers, this 26th day of October, 2005.

_____     _____ **(SEAL)**

Witness                                **BRUCE M. RICKARDS**

**STATE OF DELAWARE** :

                             : **ss.**

**COUNTY OF SUSSEX** :

**BE IT REMEMBERED**, that on this 26th day of October, 2005, personally came before me the Subscriber, a Notary Public in and for the State and County aforesaid, **BRUCE M. RICKARDS**, known to me personally, and acknowledged this Indenture to be his act and deed.

**SWORN TO AND SUBSCRIBED** before me the day and year first above written.

_____

Notary Public

**GEORGE B. SMITH**
Notary Public, State of Delaware     My Commission Expires: 3/2/2007
Commission Expires March 2,

*Exhibit*
*C*

| List of Equipment: | Price: |
|---|---|
| 2 Dump Trucks International | $10,000.00 |
| 1 Bobcat 1840 K | $11,500.00 |
| 4 Pick Up Trucks | |
|    Ford Utility Trucks | $9,000.00 |
|    '96 Dodge Pick Up | $9,000.00 |
|    2000 Chevy S10 | $9,000.00 |
|    1995 Chevy S10 | $9,000.00 |
| 1 4630 Ford Tractor | $9,000.00 |
| 1 Bush Hog | $500.00 |
| 1 Scraper Plate & Box Scraper | $600.00 |
| 1 Roller Steel Drum (Red) | $2,500.00 |
| 1 PTO Generator & Box | $3,000.00 |
| 1 Air Compressor Portable (With Trailer) | $400.00 |
| 1 1130 Case Of Tractor (Red One) | $50.00 |
| 1 Kubota Diesel Of 6' Lawn Mower | $3,500.00 |
| 1 EZ Go (Gas) | $9,000.00 |
| 1 EZ Go (Electronic) | $2,000.00 |
| 1 Club Card (Electric) (Gary & Rose) | $2500.00 |
| 1 John Deer Gas Gator (OJ) | $2,000.00 |
| 1 Forklift (4 Engine Diesel) | $10,000.00 |
| 1 Snapper Lawn Mower | $500.00 |

103050.00

# Exhibit D





Exhibit

D

Perdue Farms Incorporated
20621 Savannah Road
Georgetown, DE 19947
www.perdue.com

Dear Eastern Shore Poultry Services, Inc.,

Perdue Farms Incorporated agrees to place poultry on the California Farm subject to: (i) the agreement of the parties to list of required improvements set forth below, (ii) successful implementation and completion of such improvements, and (iii) Perdue's sign off on such implementation and completion. Perdue has documented and communicated to you through Flock Visitation Reports and meetings with Perdue Flock Service Personnel, many basic poultry management deviations and numerous animal welfare issues that have put the birds at risk. These actions are a breach of the Poultry Producer Agreement under Section II, Part B which states that the producer agrees, "To feed, water, care for and otherwise manage chicks consigned and to provide the necessary housing, equipment, and supplies to maintain equipment and housing, utilities and labor and to maintain such housing and equipment in a state of good repair and operable condition."; and Section III, Parts A and B. Furthermore, it was found that you were administering medication without knowledge or permission from Perdue's veterinarian staff, which is strictly prohibited by the Poultry Producer Agreement in Section II, Part C which states that the producer agrees "To use only feed, fuel, medications, vaccinations, and other supplies, which Perdue has provided, or has arranged to be provided to Producer for the raising of the chicks consigned." The continuing failure to comply with the clear language of the Agreement makes these actions necessary and urgent.

After reviewing the farms' visitations, the items listed below have been documented by the flock supervisor on more than one occasion. These are the minimum requirements that we feel are necessary to continue production at the California Farm.

Items addressed prior to booking:
1.    All light bulbs must be cleaned and in proper working condition
2.    Previous mortality must be completely picked up
3.    All stand-up tubes must be cleaned
4.    All stoves must be in proper working condition
5.    End-doors must be winterized
6.    Doors that are not used must be winterized
7.    Crust on the sidewalls must be cleaned
8.    Previous birds flocks must be composted properly and composter cleaned
9.    Proper trenching must be placed under the feed lines
10.   Winterize tunnel fans
11.   Make sure all side-wall fans are in working order
12.   Thermo-alarms must be in working condition at all times
13.   All old feed must be removed from the feed pans
14.   All drinker lines must be drained and sanitized
15.   All feed and drinker lines must be leveled
16.   Must have a bio-security plan per account through the Perdue Farms, Inc. current specs and must be followed

*Exhibit*

*D*

Items addressed after booking:
1.  Run the 2-2 lighting program on the 363 contract and 22-2 on the 095 and 953 contract
2.  Run the proper temperature programs
3.  Run two fans on minimum time (no more than two at one time)
4.  Alarms must be answered within 20-minutes or sooner if called
5.  Alarms must be set and in working order at all times
6.  Alarms must be set no higher or lower than target temperature
7.  Culling birds must be done daily, if needed
8.  Promptly pick up the dead on a daily basis
9.  Compost the dead properly
10. Hopper switches must be in working conditions at all times
11. Spend more time visiting and caring for the chicken houses
12. Improved communication between the flock supervisor and the managing members
13. Water lines must be fixed promptly and be on at all times in the chambers that the birds are in
14. Circulation fans must be plugged in and running
15. 48 hour preheat prior to placement
16. The use of three migration fences per house

The above listed items must be agreed upon and successfully implemented or Perdue Farms Incorporated will terminate any and all contracts on the farms that do not comply with the above requirements.

Thank you,


Lloyd Jones                                      Vernon Perdue
Grow-Out Manager                                 Live Production Manager
Perdue Farms, Inc.                               Perdue Farms, Inc.
(302) 855-5650                                   (302) 855-5510

WITNESS:


_____

                                                 _____
WITNESS:                                         PRODUCER


_____

                                                 _____
                                                 PRODUCER


                                                 _____
                                                 DATE




*A Family Commitment to Quality Since 1920™*

# Exhibit E

*Exhibit
E*

TAX MAP NO. 5-33 5.00 42.00 - 5-33 10.00 44.00 &
5-33 5.00 37.00
Prepared by and return to:
Eric C. Howard, Esquire
Wilson, Halbrook & Bayard, P.A.
107 West Market Street
P.O. Box 690
Georgetown, DE 19947

## 𝔇 𝔈 𝔈 𝔇

**𝕿𝖍𝖎𝖘 𝕯𝖊𝖊𝖉**, Made this _____ day of _____, A.D. 2006,

### 𝕭 𝖊 𝖙 𝖜 𝖊 𝖊 𝖓

**EASTERN SHORE CHICKEN FARM, LLC**, of 32066 McCary Road, Frankford, DE 19945, party of the first part, hereinafter referred to as the "Grantor",

### 𝕬 𝖓 𝖉

**BRUCE M. RICKARDS**, of 26944 Colony Drive, Dagsboro, DE 19939, party of the second part, hereinafter referred to as the "Grantee",

### 𝖂 𝖎 𝖙 𝖓 𝖊 𝖘 𝖘 𝖊 𝖙 𝖍:

That the Grantor, for and in consideration of the sum of ONE DOLLAR ($1.00), current lawful money of the United States of America, the receipt whereof is hereby acknowledged, hereby grants and conveys unto the Grantee, his heirs and assigns all its right title and interest in and to the following described real property as follows to wit:

## TRACT 1: TMP 5-33 5.00 42.00

Parcel 1:

**𝕬𝖑𝖑 𝕿𝖍𝖔𝖘𝖊** two certain tracts, pieces and parcels of land, lying and being in Baltimore Hundred, Sussex County and State of Delaware, bounded and described as follows, to wit:

Tract No. 1: BEING situate on the southern side of the County Road leading from Roxana to Frankford, BEGINNING at the said County Road on line of David H. Hudson's land and running a southerly direction with line of said Hudson's land to a ditch; thence an easterly course along with and in the center of said ditch, so for as the ditch extends, and thence a straight line in the same direction to the line of Nathaniel S. Lynch's land, where there is a post; thence along and with the line of lands of said Lynch to the County Road a

northerly course; thence a westerly direction with said County Road to the place of Beginning, it being formerly owned by Ebe W. McCabe, deceased, containing 10 acres of land more or less.

Tract No. 2: BEGINNING in the center of an old ditch that runs through the woods, a post marking the beginning and extending with said ditch a southerly course to the line of James H. Lynch's land where there is another post; thence with James H. Lynch's line a westerly direction to the line of David H. Hudson's land to a post; thence with David H. Hudson's line until it intersects the lands of Dora J. Murray in easterly course thence with said Murray's land to the place of BEGINNING. It being lands formerly owned by Ebe W. McCabe, deceased, containing 5 acres of land, more or less.

EXCEPTING THEREFROM all those two certain tracts, pieces and parcels of land, situate, lying and being in Baltimore Hundred, Sussex County, State of Delaware and being described in accordance with a survey prepared by J.J. McCann, Inc., Registered Surveyor, dated July 29, 1974:

Tract No. 1: BEGINNING at concrete monument located in the South right of way line of Delaware Route 385; thence from said point of beginning South 18 degrees 43 minutes 19 seconds West 132.86 feet to a concrete marker; thence turning and running from the line of land of (Young) South 69 degrees 18 minutes 21 seconds East 245.32 feet to an iron pin located on the south right of way line of Delaware Route 385; thence with south right of way line of Delaware Route 385, North 41 degrees 19 minutes 20 seconds West 282.98 feet to a concrete monument the point and place of beginning, containing 0.374 acres of land be the same more or less.

Tract No. 2: BEGINNING at a iron pipe located in the North right of way line of Delaware Route 385 and at line of land of (Peterson) thence by and with the north right of way line of Delaware Route 385 South 41 degrees 19 minutes 20 seconds East 411.28 feet to a concrete monument; thence turning and running with the center line of a ditch of lands of Clarence Lynch South 67 degrees 29 minutes 01 seconds East 748.61 feet to a concrete monument; thence turning and running with the land of Rollin Hudson North 20 degrees 32 minutes 07 seconds East 427.93 feet to a concrete monument located in the south right of way line of Delaware Route 92; thence and with the south right of way line of Delaware Route 92 North 71 degrees 17 minutes 29 seconds West 1117.61 feet to an iron pipe in lands of Peterson; thence turning and running with said Peterson lands South 18 degrees 28 minutes 05 seconds West 172.54 feet to an iron pipe the point and place of beginning. Containing 9.227 acres of land, be the same more or less.

The above two tracts of land were conveyed by Harold Marvel and S. Jean Marvel, his wife, to Roy F. Swords and Angela M. Swords, his wife by deed dated August 26, 1974, and of record in the Office of the Recorder of Deeds in Georgetown, Sussex County, Delaware in Deed Book 736, Page 431.

Parcel 2:

ALL that certain tract piece or parcel of land situate, lying and being in Baltimore Hundred, Sussex County and State of Delaware being more particularly described as follows, according to a survey made by J.J. McCann, Registered Surveyor on April 10, 1971:

BEGINNING at a point locate din the southerly right of way of Delaware Route No. 385 and in the center of a line ditch thence by and with Delaware Route No. 385, North 41 degrees 45 minutes West 982.13 feet to an iron pipe; thence turning and running North 69 degrees 54 minutes 12 seconds West with the centerline of a ditch and hedge row 245.55 feet to a concrete marker; thence, turning and running South 18 degrees 19 minutes 09 seconds West 939.30 feet to a marked tree; thence, turning and running South 57 degrees 43 minutes 50 seconds East 424.25 feet to a concrete marker; thence turning and running  South 34 degrees 09 minutes 51 seconds West 589.99 feet to a concrete marker in the centerline of an old ditch; thence by and with the center of said old ditch South 71 degrees 24 minutes 51 seconds East 858.96 feet to a marked tree in the center of said ditch and at the intersection of another ditch; thence by and with the center of the last mentioned ditch, North 17 degrees 38 minutes 59 seconds East 1115.56 feet to the southerly line of Delaware Route No. 385, the point and place of beginning, containing 30.956 acres of land, be the same more or less.

BEING the same lands conveyed to Bruce M. Rickards by deed of Bruce M. Rickards and Virginia Lee Rickards dated December 29, 1992, and filed for record in the Office of the Recorder of Deeds in and for Sussex County in Deed Book 1895, Page 25.

### TRACT 2: TMP 5-33 10.00 44.00

ALL that certain tract, piece and parcel of land, situate, lying and being in Baltimore Hundred, Sussex County, Delaware, lying on the northerly side of State Road #392 (formerly #381), BEGINNING for a corner at the corner of said road and lands formerly of F.M. Gum, Jr.; thence running with said Gum's lands, northerly 31 ½ perches to lands formerly of Effo M. Lynch Bennett; thence with said Bennet's lands, easterly 114 perches to lands formerly of Elmer C. Murray; thence with said Murray's lands, southerly 22 perches and easterly 23 perches to lands now or formerly of Everett Burk Stevens; thence with said Steven's lands, southerly 64 perches to center of aforesaid State Road; thence with said road, westerly 97 perches and northwesterly 73 perches to the place of beginning, containing 60 acres of land, more or less.

EXECEPTING THEREFROM, all that certain lot, piece and parcel of land conveyed unto W. Michael Kellish, by deed dated April 19, 1972, of record in the Office of the Recorder of Deeds, aforesaid, in  Deed Book 681, Page 736, said to contain 6.069 acres of land, more or less.

**TRACT 3: TMP 5-33 5.00 37.00**

ALL that certain tract, piece and parcel of land, situate, lying and being in Baltimore Hundred, Sussex County, Delaware, situated one half mile south of the swamp road leading from Roxana to Frankford, adjoining lands now or formerly of Tolbert, lands now or formerly of Elmer Murray, Viola Lynch, P.M. Gum and Ralph Smith, containing thirty-four (34) acres of land, more or less.

BEING the same lands conveyed to Eastern Shore Chicken Farm, LLC by deed of Bruce M. Rickards dated October 26, 2005, Bruce M. Rickards and Carla E. Timmons dated October 26, 2005 and filed for record in the Office of the Recorder of Deeds in and for Sussex County in Deed Book 3225 Page 248 and Deed Book 3225, Page 246.

SUBJECT to any and all restrictions, reservations, conditions, easements and agreements of record in the Office of the Recorder of Deeds in and for Sussex County, Delaware.

**In Witness Whereof**, the Grantor has caused these presents to be duly executed, the day and year aforesaid.

**SIGNED, SEALED AND DELIVERED**
in the Presence of:

Eastern Shore Chicken Farm, LLC

By: _____ (SEAL)

_____
Witness

**STATE OF**                    )
                                : ss.
**COUNTY OF**                   )

**BE IT REMEMBERED**, That on this _____ day of _____, A.D. 2006, personally appeared before me, the Subscriber, a Notary Public for the State and County aforesaid, **Tam Nguyen**, Manager of Eastern Shore Chicken Farm, LLC, party to this Indenture, known to me personally to be such, and he acknowledged this Indenture to be his act and deed and the act and deed of Eastern Shore Chicken Farm, LLC.

GIVEN under my Hand and Seal of Office, the day and year aforesaid.

_____
Notary Public

My Commission Expires:

| STATE OF DELAWARE | REALTY TRANSFER TAX RETURN | |
|---|---|---|
| DEPARTMENT OF FINANCE | **AND** | |
| DIVISION OF REVENUE | **AFFIDAVIT OF GAIN AND VALUE** | DO NOT WRITE OR STAPLE IN THIS AREA |
| 820 N. French Street | | |
| P.O. Box 8750 | **Form 5402** | |
| Wilmington, Delaware 19899-8750 | | Rev. Code 050 |

Form 5402 must be completed for all conveyances and must be presented at the time of recording.

## PART A - TO BE COMPLETED BY GRANTOR/SELLER

1. Enter Employer Identification Number        or Social Security Number

5. The Grantor is a:

2. Name of Grantor
   Eastern Shore Chicken Farm, LLC

   [ ] Resident Individual
[ ] Non-Resident Individual
[ ] Domestic Corporation (Delaware)
[ ] Foreign Corporation (Non-Delaware)
[ ] S Corporation
[ ] Government Agency
[ ] Fiduciary (Estate or Trust)
[ ] Partnership
[ ] Non-Profit Corporation

3. Address
   32066 McCary Road

  City, State, Zip        County
   Frankford, DE 19945

4. A gain was _____ was not _____ realized on the sale of the real estate conveyed.

## PART B - TO BE COMPLETED BY GRANTEE/BUYER

1. Enter Employer Identification Number        or Social Security Number

4. The Grantee is a:

2. Name of Grantee
   Bruce M. Rickards

   [ ] Resident Individual
[ ] Non-Resident Individual
[ ] Domestic Corporation (Delaware)
[ ] Foreign Corporation (Non-Delaware)
[ ] S Corporation
[ ] Government Agency
[ ] Fiduciary (Estate or Trust)
[ ] Partnership
[ ] Non-Profit Corporation

3. Address
   26944 Colony Drive

  City, State, Zip        County
   Dagsboro, DE 19939

## PART C - PROPERTY LOCATION AND VALUE

1. Address

   5-33 5.00 42.00  - 5-33 10.00 44.00 & 5-33 5.00 37.00

7. The Property is:

   [ ] Industrial/Commercial
[ ] Residential
[ ] Other, including property primarily used
         in farming

  City, State, Zip        County

## COMPUTATION OF THE TAX

2. Conveyances with consideration. Enter the amount of consideration received including cash, checks, mortgages, liens, encumbrances, and any other good and valuable consideration.
   Was like kind property exchanged? [  ] Yes    [  ] No    (If yes, see Instructions)

3. Conveyances without full consideration. Enter the highest assessed value (for local tax purposes) of the real estate being conveyed.
   Was like kind property exchanged? [  ] Yes    [  ] No    (If yes, see Instructions)

4. Enter the greater, Line 2 or Line 3        _____
5. Multiply Line 4 times 1.5%        X_____ 1.5
6. Tax Due and Payable with the recording of this document.        **Tax Exempt**

### PART D - EXEMPT CONVEYANCES

If transaction is exempt from Realty Transfer Tax, be certain that all of the above information (including market value of the real estate) is **complete** and **accurate** and explain the basis for the exemption:
        30 Del.C. §5401(1)b.

The seller authorizes the Division of Revenue or such other appropriate state agency as may be designated to obtain any appropriate or necessary federal income tax forms, including their attached schedules or other attachments, and any other related papers filed by such seller which relate solely to the said real estate to which title is purported to be conveyed by the deed or instrument being recorded. Delaware law requires an income tax return to be filed for the taxable year during which there was disposition of real property within this state.

Sworn and Subscribed before me
on this _____ day of _____ 2006

_____
                  *Seller's Signature*

_____
Notary Public

_____
                  *Title of Officer/Partner*

**AFFIDAVIT FOR REALTY TRANSFER TAX ON UNINCORPORATED
AREAS IN SUSSEX COUNTY PURSUANT TO CHAPTER 103 OF
THE SUSSEX COUNTY CODE**

*NOTE: Affidavit is required on all transactions (incorporated or unincorporated areas)*

## Part A - To Be Completed by GRANTOR/SELLER

NAME      Eastern Shore Chicken Farm, LLC
ADDRESS   32066 McCary Road
CITY      Frankford                        Employer I.D. #
STATE     Delaware 19945

## Part B - To Be Completed by GRANTEE/BUYER

NAME      Bruce M. Rickards             SOCIAL SECURITY #
ADDRESS   26944 Colony Drive
CITY      Dagsboro                      EMPLOYER I.D. #
STATE     Delaware 19939

## Part C - PROPERTY LOCATION

Tax ID. No. 5-33 5.00 42.00 - 5-33 10.00 44.00 & 5-33 5.00 37.00

District _____   Map _____   Parcel _____

## Part D - COMPUTATION OF THE TAX

1.   CONVEYANCES WITH CONSIDERATION--                    $
            Enter Consideration Received
2.   CONVEYANCES WITHOUT CONSIDERATION--                 $
        Enter Highest Assessed Value For Local Tax Purposes
3.   Enter the greater, Line 2 or Line 3
4.   Multiply Line 3 times 1.5% -- Tax Due and           $    **Tax Exempt**
        Payable

EXEMPT CONVEYANCES: If transaction is exempt from Transfer tax,
explain the basis for the exemption:  §103-18 A.16 S.C.Code

First Time Home Buyer? Yes _____ No _____ (If "Yes", attach First Time
Home Buyer Affidavit)

Sworn and Subscribed before me on
this     day of      , 2006.

                                     _____
                                     Seller's Signature
_____ Notary

My Commission Expires:

OFFICE USE ONLY:

**Plaintiff's Complaint filed November 17, 2006**

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN AND FOR SUSSEX COUNTY

BRUCE M. RICKARDS,                    :

                                      :    C.A. No. 06 C-11-032 RFS
                    Plaintiff,        :
                                      :    **SCI FA SUR MORTGAGE**
                                      :    **MORTGAGE BOOK 8194, PAGE 318**
                                      :
                                      :    **NON-ARBITRATION CASE**
              vi.                     :
                                      :
EASTERN SHORE CHICKEN FARM            :
LLC, a limited liability company of the    :
State of Delaware;                    :
                                      :
                    Defendant.        :

### PRAECIPE

TO:    Prothonotary
       SUPERIOR COURT
       1 The Circle, Suite 2
       Georgetown, DE  19947


**PLEASE ISSUE** a summons for Defendant Eastern Shore Chicken Farm, LLC and deliver

it along with a copy of the Complaint to the Sheriff of Sussex County for service upon Defendant

Eastern Shore Chicken Farm, LLC's registered agent, Tam Van Nguyen, 32066 McCary Road,

Frankford, Delaware 19945.

                              WILSON, HALBROOK & BAYARD
                              107 West Market Street
                              P.O. Box 690
                              Georgetown, DE  19947
                              (302) 856-0015

                              By:
                                 Eric C. Howard
                                 Attorneys for Plaintiff

DATED:   November 14, 2006

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN AND FOR SUSSEX COUNTY

| | | |
|---|---|---|
| BRUCE M. RICKARDS, | : | |
| | : | |
| | : | **C.A. No. 06L-11-032 RFS** |
| Plaintiff, | : | |
| | : | **SCI FA SUR MORTGAGE** |
| | : | **MORTGAGE BOOK 8194, PAGE 318** |
| | : | |
| | : | **NON-ARBITRATION CASE** |
| v. | : | |
| | : | |
| EASTERN SHORE CHICKEN FARM | : | |
| LLC, a limited liability company of the | : | |
| State of Delaware; | : | |
| | : | |
| Defendant. | : | |

**THE STATE OF DELAWARE,**
**TO THE SHERIFF OF SUSSEX COUNTY:**

**YOU ARE COMMANDED:**

To summon the above-named Defendant so that, within twenty (20) days after service hereof upon Defendant, exclusive of the date of service, Defendant shall serve upon Eric C. Howard, Plaintiff's attorney, whose address is 107 West Market Street, P.O. Box 690, Georgetown, Delaware 19947, whose Complaint (and, if an Affidavit of Demand has been filed, an Affidavit of Defense).

To serve upon Defendant a copy hereof and of the Complaint (and of the Affidavit of Demand, if any has been filed by Plaintiff).

Dated: _____

Prothonotary

Per Deputy

6

**TO THE ABOVE-NAMED DEFENDANT:**

In case of your failure, within twenty (20) days after service hereof upon you, exclusive of the day of service, to serve on Plaintiff's attorney, named above, an Answer to the Complaint (and, if an Affidavit of Demand has been filed, an Affidavit of Defense), judgment by default will be rendered against you for the relief demanded in the Complaint (or in the Affidavit of Demand, if any).

_Joyce M. Collins_
Prothonotary

_Pat Thatcher_
Per Deputy

**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

**IN AND FOR SUSSEX COUNTY**

| | | |
|---|---|---|
| BRUCE M. RICKARDS, | : | |
| | : | |
| | : | **C.A. No.** |
| Plaintiff, | : | |
| | : | **SCI FA SUR MORTGAGE** |
| | : | **MORTGAGE BOOK 8194, PAGE 318** |
| | : | |
| | : | **NON-ARBITRATION CASE** |
| v. | : | |
| | : | |
| EASTERN SHORE CHICKEN FARM | : | |
| LLC, a limited liability company of the | : | |
| State of Delaware; | : | |
| | : | |
| Defendant. | : | |

**COMPLAINT**

1.    Plaintiff is an individual.

2.    Defendant Eastern Shore Chicken Farm, LLC is a limited liability company of the State of Delaware having Tam Van Nguyen, 32066 McCary Road, Frankford, Delaware 19945 as its registered agent.

3.    Defendant executed and delivered to Plaintiff a certain purchase money mortgage, dated October 26, 2005, a certified copy of which is attached hereto as Exhibit "A", which mortgage was duly recorded in the Office of the Recorder of Deeds, in and for Sussex County, at Georgetown, Delaware, in Mortgage Book 8194, Page 318, et. seq.

4.    The mortgage was given to secure a certain obligation of even date therewith from Defendant in the amount of $4,450,000.00 ("the Note").

5.    The mortgaged premises is improved by, among other things, 26 chicken houses, which chicken houses represent a significant portion of the value of the mortgaged premises.

6.    Implied within the aforementioned mortgage was an obligation on the part of Defendant to protect, preserve and maintain the mortgaged premises, including the 26 chicken houses thereon.

7.    Defendant has failed to preserve and maintain the mortgaged premises, allowing the same to fall into waste, which is causing the mortgaged premises to depreciate in value, thereby impairing Plaintiff's collateral.

8.    Those failures to protect, preserve and maintain include but are not necessarily limited to the following:

> (i)    breaking and failing to repair concrete block foundations of the chicken houses;
>
> (ii)    breaking and failing to repair doors of chicken houses;
>
> (iii)    breaking and failing to repair fan shrouds of the chicken houses; and
>
> (iv)    allowing a fire to occur in a chicken house and failing to repair the resultant holes in the roof.

9.    Plaintiff has made demand upon Defendant that Defendant correct such breaches identified in paragraph 8, above, and despite such demand, Defendant continues to allow the mortgaged premises to fall into waste, thereby impairing the value of Plaintiff's collateral, and breaching Defendant's obligations under the mortgage.

10.    Defendant remains indebted on the Note secured by the mortgage as of November 13, 2006, in the amount of $4,291,610.25, plus accruing interest from November 13, 2006, at the rate of 6% per annum producing per diem interest of $700.40.

11.    The Note and mortgage further provide that in the event of default, Plaintiff shall be entitled to collect in enforcing the mortgage reasonable attorneys' fees of 5% of the amount decreed for principal and interest.

**WHEREFORE,** Plaintiff demands that judgment be entered in his favor and against Defendant in the amount of $4,291,610.25, plus interest accrued from November 13, 2006, reasonable attorneys' fees of five percent (5%) of the principal and interest due, and all the costs of this action, all of which to be levied out of the premises.

WILSON, HALBROOK & BAYARD
107 West Market Street
P.O. Box 690
Georgetown, DE 19947
(302) 856-0015

By:
Eric C. Howard
Attorneys for Plaintiff

DATED:    November 14, 2006

3

## CERTIFICATE OF NON-ARBITRATION

I, Eric C. Howard, hereby certify that the foregoing Complaint is not subject to compulsory arbitration under Superior Court Civil Rule 16 in that the Complaint seeks non-monetary relief, i.e. an in rem judgment enforcing a mortgage against real property.

_____
Eric C. Howard

DATED: November 14, 2006

# Exhibit "A"

59113    =08194 ≈318

Tax Map Parcel No.: 5-33-10.00-44,5-
33-5.00-42 & 37.00
Prepared by and return to:
George B. Smith, Esquire
Smith O'Donnell Feinberg & Berl, LLP
1539 Highway One
Lewes, DE  19958

### PURCHASE MONEY MORTGAGE

**THIS PURCHASE MONEY MORTGAGE**, made this 26ᵗʰ day of October, in the year of
our Lord two thousand five (2005),

**BETWEEN, EASTERN SHORE CHICKEN FARM, LLC**, a Delaware limited liability
company, of 32066 McCary Road, Frankford, DE  19945, party of the first part,

#### - AND -

**BRUCE M. RICKARDS**, of RR 4, Box 255A, Frankford, DE  19945, party of the second
part,

**WHEREAS,** the said party of the first part, in and by that certain Obligation or Writing
Obligation under seal and duly executed, bearing even date herewith, stands bound unto the said
parties of the second part, in the sum of **FOUR MILLION HUNDRED FOUR HUNDRED
FIFTY THOUSAND and 00/100 DOLLARS ($4,450,000.00),** lawful money of the United States
of America, to be paid on or before the 30th day of September, 2020 with interest at six percent (6%)
thereon from the date hereof, payable as set forth in such Obligation.

**PROVIDED, HOWEVER,** and it is thereby expressly agreed, that if at any time default
shall be made in the payment of any installment of interest or principal, as aforesaid, for the space of
thirty (30) days after the same shall fall due, as aforesaid, then, and in such case, the whole principal
debt aforesaid shall, at the option of the said parties of the second part, their heirs, executors,
administrators, successors or assigns become due and payable immediately, and payment of said
principal and all interest thereon may be enforced and recovered at once, anything therein contained
to the contrary thereof notwithstanding, as by reference to the said recited Obligation and the
Conditions thereof, will more fully appear.

**NOW THIS MORTGAGE WITNESSETH,** that the said party of the first part, for and in
consideration of the aforesaid debt or principal sum of **FOUR MILLION FOUR HUNDRED
FIFTY THOUSAND and 00/100 DOLLARS ($4,450,000.00)** and for the better securing the
payment of the same, with interest as aforesaid, and counsel fees as herein provided, unto the said
parties of the second part, their heirs, executors, administrators, successors or assigns in discharge of
the said recited Obligations, as also of the further sum of Fifty Cents ($.50) unto the said party of the
first part, now paid by the said parties of the second part, the receipt whereof is hereby
acknowledged, has granted, bargained, sold, aliened, enfeoffed, released and confirmed, and by these

1

208194 8319

presents does grant, bargain, sell, alien, enfeoff, release and confirm unto the said parties of the second part:

### SEE EXHIBIT "A" ATTACHED

AND PROVIDED ALSO, and it is expressly agreed by and between the parties hereto, that the said party of the first part shall and will keep the buildings erected upon the lands mortgaged, insured against loss and damage by fire, by approved company or companies, and in an amount not less than **FOUR MILLION FOUR HUNDRED FIFTY and 00/100 DOLLARS ($4,450,000.00)** and the policy or policies of insurance, shall be assigned and transferred to the Mortgagee herein as their interests may appear, as collateral security for the loan hereby secured, and in default thereof it shall be lawful for the said Mortgagee to effect the aforesaid insurance, and the premium or premiums paid for so effecting and continuing the same shall be a lien upon the mortgaged premises aforesaid, added to the amount of the principal debt secured by these presents, and payable on demand with lawful interest thereon until paid. Failure on the part of the said Mortgagor herein so to pay said premiums aforesaid for the space of thirty (30) days after demand by said Mortgagee shall at the option of the said Mortgagee, render the whole principal debt due and payable immediately.

AND it is hereby expressly provided and agreed, that no assumption of this Mortgage shall occur without the express written consent of the parties of the second part.

It is expressly provided and agreed, that the party of the first part shall keep the property free and clear of all liens and encumbrances and shall pay all taxes and assessments for the current year assessed against the premises herein described within sixty (60) days of the due date for said taxes and assessment.

Interest will be computed pursuant to the United States Rule to the date payment is due. If any payment is not received within fifteen (15) days after its due date, a late charge of five percent (5%) of the payment in default will be made.

TOGETHER with all and singular the land, buildings, improvements, ways, woods, waters, water-courses, rights, liberties, privileges, hereditaments and appurtenances whatsoever thereunto belonging, or in anywise appertaining, and the reversions and remainders, rents, issues, and profits thereof.

TO HAVE AND TO HOLD the said tract, piece or parcel of land, with the buildings, improvements, hereditaments and premises hereby granted, or mentioned, or intended so to be, with the appurtenances, unto the said parties of the second part, to and for the use and benefit of the said parties of the second part, their heirs, executors, administrators, successors or assigns, forever.

AND it is expressly provided and agreed that if any action, suit, matter or proceeding be brought for the enforcement of this Mortgage or the accompanying Bond, and if the plaintiff or lienholder in said action, suit or proceeding shall recover judgment in any sum, such plaintiff or lienholder shall also recover as reasonable counsel fees five percent (5%) of the amount decreed for principal and interest, which said counsel fees shall be entered, allowed and paid as a part of the decree or judgment in said action, suit or proceeding.

2

08194 320

**PROVIDED ALWAYS,** nevertheless, that if the said party of the first part shall and do well and truly pay, or cause to be paid, unto the said parties of the second part, the aforesaid debt or principal sum of **FOUR MILLION FOUR HUNDRED FIFTY THOUSAND and 00/100 DOLLARS ($4,450,000.00)** on the day and time hereinbefore mentioned and appointed for the payment thereof, with interest, according to the condition of the said recited Obligation, without any fraud or further delay, and without any deduction, defalcation or abatement to be made, of anything for or in respect of any taxes, charges or assessments whatsoever, that then, and from thenceforth, as well this present Indenture and the Estate hereby granted, as the said recited Obligation shall cease, determine and become absolutely void and of no effect, anything hereinbefore contained to the contrary thereof, in anywise notwithstanding.

**AND PROVIDED,** also, that it shall and may be lawful for the parties of the second part, when and as soon as the principal debt or sum hereby secured shall become due and payable as aforesaid, or in case default shall be made for the space of thirty (30) days in the payment of interest as aforesaid, after any such payment thereof shall fall due as aforesaid, to sue out forthwith a Writ or Writs of Scire Facias upon this Indenture of Mortgage, and to proceed thereon to judgment and execution for the recovery of the said principal debt, and all interest due thereon, without further stay, any law, usage, or custom to the contrary notwithstanding.

**AND PROVIDED,** also, any forbearance by the parties of the second part in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**ALL REMEDIES** provided in this Mortgage are distinct and cumulative to any other right or remedy under this Mortgage or afforded by law or equity, and may be exercised concurrently, independently or successively.

**IN WITNESS WHEREOF,** the said party of the first part has caused these presents to be signed by its proper officers and its corporate seal to be hereunto affixed the day and year aforesaid.

**EASTERN SHORE CHICKEN FARM, LLC,** a
Delaware limited liability company

By: _____
Manager

Witness

3

**08194 321**

**STATE OF DELAWARE** :

: ss.

**COUNTY OF SUSSEX** :

    **BE IT REMEMBERED**, that on this _26th_ day of October, 2005, personally came before me the Subscriber, a Notary Public in and for the State and County aforesaid, _Tam Nguyen_ , Manager of **EASTERN SHORE CHICKEN FARM, LLC**, a limited liability company of the State of Delaware, party of this Indenture, known to me personally to be such, and acknowledged this Indenture to be his act and deed, and the act and deed of the said limited liability company; that the signature of the Manager is in his own proper handwriting; and that the act of signing, acknowledging and delivering the said Indenture was first duly authorized by resolution of the Members and Manager of the said limited liability company.

    **SWORN TO AND SUBSCRIBED** before me the day and year first above written.

        **GEORGE B. SMITH**
Notary Public, State of Delaware
Commission Expires March 2, 2007

Notary Public

My Commission Expires: 3/2/2007

4

 ᴮ08194 ᴾ322

# Exhibit A

**TRACT 1: TMP 5-33-5.00-42.00**

Parcel 1:

All those two certain tracts, pieces and parcels of land, lying and being in Baltimore Hundred, Sussex County, State of Delaware, bounded and described as follows, to wit:

Tract No. 1: BEING situate on the southern side of the County Road leading from Roxana to Frankford, BEGINNING at the said County Road on line of David H. Hudson's land and running a southerly direction with line of said Hudson's land to a ditch; thence an easterly course along with and in the center of said ditch, so far as the ditch extends, and thence a straight line in the same direction to the line of Nathaniel S. Lynch's land, where there is a post; thence along and with the line of the lands of said Lynch to the County Road a northerly course; thence a westerly direction with said County road to the place of Beginning, it being formerly owned by Ebe W. McCabe, deceased, containing 10 acres of land, more or less.

Trace No. 2: BEGINNING in the center of an old ditch that runs through the woods, a post marking the beginning and extending with said ditch a southerly course to the line of James H. Lynch's land where there is another post; thence with James H. Lynch's line a westerly direction to the line of David H. Hudson's land to a post; thence with David H. Hudson's line until it intersects the lands of Dora J. Murray in easterly course thence with said Murray's land to the place of BEGINNING. It being lands formerly owned by Ebe W. McCabe, deceased, containing 5 acres of land, more or less.

EXCEPTING THEREFROM all those two certain tracts, pieces and parcels of land, situate, lying and being in Baltimore Hundred, Sussex County, State of Delaware and being described in accordance with a survey prepared by J. J. McCann, Inc., Registered Surveyor, dated July 29, 1974:

Tract No. 1: BEGINNING at a concrete monument located in the South right of way line of Delaware Route 385; thence from said point of beginning South 18 degrees 43 minutes 19 seconds West 132.86 feet to a concrete marker; thence turning and running from the line of land of (Young) South 69 degrees 18 minutes 21 seconds East 245.32 feet to an iron pin located on the south right of way line of Delaware Route 385; thence with south right of way line of Delaware Route 385, North 41 degrees 19 minutes 20 seconds West 282.98 feet to a concrete monument the point and place of beginning, containing 0.374 acres of land be the same more or less.

Tract No. 2: BEGINNING at a iron pipe located in the North right of way line of Delaware Route 385 and at line of land of (Peterson) thence by and with the north right of way line of Delaware Route 385 South 41 degrees 19 minutes 20 seconds East 411.28

≋08194 ☰323

feet to a concrete monument; thence turning and running with the center line of a ditch of lands of Clarence Lynch South 67 degrees 29 minutes 01 seconds East 748.61 feet to a concrete monument; thence turning and running with the land of Rollin Hudson North 20 degrees 32 minutes 07 seconds East 427.93 feet to a concrete monument located in the south right of way line of Delaware Route 92; thence and with the south right of way line of Delaware Route 92 North 71 degrees 17 minutes 29 seconds West 1117.61 feet to an iron pipe in lands of Peterson; thence turning and running with said Peterson lands South 18 degrees 28 minutes 05 seconds West 172.54 feet to an iron pipe the point and place of beginning. Containing 9.227 acres of land, be the same more or less.

The above two tracts of land were conveyed by Harold Marvel and S. Jean Marvel, his wife, to Roy F. Swords and Angela M. Swords, his wife by deed dated August 26, 1974, and of record in the Office of the Recorder of Deeds Georgetown, Sussex County, Delaware in Deed Book 736, Page 431.

Parcel 2:

ALL that certain tract piece or parcel of land situate, lying and being in Baltimore Hundred, Sussex County and State of Delaware being more particularly described as follows, according to a survey made by J. J. McCann, Registered Surveyor on April 10, 1971:

BEGINNING at a point locate din the southerly right of way of Delaware Route No. 385 and in the center of a line ditch thence by and with Delaware Route No. 385, North 41 degrees 45 minutes West 982.13 feet to an iron pipe; thence turning and running North 69 degrees 54 minutes 12 seconds West with the centerline of a ditch and hedge row 245.55 feet to a concrete marker; thence, turning and running South 18 degrees 19 minutes 09 seconds West 939.30 feet to a marked tree; thence, turning and running South 57 degrees 43 minutes 50 seconds East 424.25 feet to a concrete marker; thence turning and running South 34 degrees 09 minutes 51 seconds West 589.99 feet to a concrete marker in the centerline of an old ditch; thence by and with the center of said old ditch South 71 degrees 24 minutes 51 seconds East 858.96 feet to a marked tree in the center of said ditch and at the intersection of another ditch; thence by and with the center of the last mentioned ditch, North 17 degrees 38 minutes 59 seconds East 1115.56 feet to the southerly line of Delaware Route No. 385, the point and place of beginning, containing 30.956 acres of land, be the same more or less.

BEING the same lands conveyed to Bruce M. Rickards by deed of Bruce M. Rickards and Virginia Lee Rickards dated December 29, 1992, and filed for record in the Office of the Recorder of Deeds in and for Sussex County in Deed Book 1895, Page 25.

**TRACT 2: TMP 5-33-10.00-44.00**

ALL that certain tract, piece and parcel of land, situate, lying and being in Baltimore Hundred, Sussex County, Delaware, lying on the northerly side of State Road #392 (formerly #381), BEGINNING for a corner at the corner of said road and lands

=08194 =324

formerly of F. M. Gum, Jr.; thence running with said Gum's lands, northerly 31 ½ perches to lands formerly of Effo M. Lynch Bennett; thence with said Bennett's lands, easterly 114 perches to lands formerly of Elmer C. Murray; thence with said Murray's lands, southerly 22 perches and easterly 23 perches to lands now or formerly of Everett Burk Stevens; thence with said Steven's lands, southerly 64 perches to center of aforesaid State road; thence with said road, westerly 97 perches and northwesterly 73 perches to the place of beginning, containing 60 acres of land, more or less.

EXCEPTING THEREFROM, all that certain lot, piece and parcel of land conveyed unto W. Michael Kellish, by deed dated April 19, 1972, of record in the Office of the Recorder of Deeds, aforesaid, in Deed Book 681, Page 736, said to contain 6.069 acres of land, more or less.

BEING the same lands conveyed to Bruce M. Rickards by deed of Bruce M. Rickards and Virginia Lee Rickards dated December 29, 1992, and filed for record in the Office of the Recorder of Deeds in and for Sussex County in Deed Book 1895, Page 28.

**TRACT 3: TMP 5-33-5.00-37.00**

ALL that certain tract, piece and parcel of land, situate, lying and being in Baltimore Hundred, Sussex County, Delaware, situated one half mile south of the swamp road leading from Roxana to Frankford, adjoining lands now or formerly of Tolbert, lands now or formerly of Elmer Murray, Viola Lynch, P. M. Gum and Ralph Smith, containing thirty-four (34) acres of land, more or less.

RECORDER OF DEEDS
JOHN F. BRADY

05 NOV -2 PM 2: 26

SUSSEX COUNTY
DOC. SURCHARGE **PAID**

STATE OF DELAWARE
SUSSEX COUNTY

JOHN F. BRADY, RECORDER OF DEF
DOES HEREBY CERTIFY THAT THE A
FOREGOING IS A TRUE AND COMPLET

ATTEST: _John F. Brody_
PER: _____

**Defendant's Answer to Plaintiff's Complaint filed November 17, 2006, with the initial "Agreement of Sale" dated June 30, 2005, which does not confirm thereon, who it was prepared by, which is also unconscionable**

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE IN

## AND FOR SUSSEX COUNTY

BRUCE M. RICKARDS,                          :
                                            :    C.A. No. 06L – 11 – 032 RFS
                            Plaintiff,       :
                                            :
                                            :
                                            :
            vs.                             :
                                            :
                                            :
                                            :
EASTERN SHORE CHICKEN FARM                  :
LLC, a limited liability company of the     :
State of Delaware;                          :
                                            :
                            Defendant.       :

## <u>ANSWER</u> TO PLAINTIFF'S COMPLAINT

1.    Paragraph One is Affirmed.

2.    Paragraph Two is Affirmed.

3.    Paragraph Three is Affirmed.

4.    Paragraph Four is Affirmed.

5.    Paragraph Five is Affirmed.

6.    Paragraph Six is Denied, Defendant purchased this mortgaged premises on a "AS IS" conditions, therefore Defendant agreed to protect, preserve and maintain the mortgaged premises, including the 26 chicken houses thereon, in the agreed "AS IS" conditions.

7.    Paragraph Seven is Denied.

8.    Paragraph Eight, (i), (ii), (iii) and (iv) are Denied, furthermore Defendant has proof.

2

9.      Paragraph Nine is Affirmed, to the extent that Plaintiff has made demand upon Defendant that Defendant correct such breaches, but Defendant again, Denied such breaches identified in the above Paragraph Eight.

10.    Paragraph Ten is Affirmed.

11.    Paragraph Eleven is Affirmed.

**WHEREFORE**, Defendant filed **Notice of removal.**

By: _____

Duc Ngo and Tina Ngo
P.O. Box 1374
Ocean View, Delaware 19970
**(New address - for safety issues)**

DATE *Dec 29. 06*

3

# Exhibit F

*Exhibit*
*F*

## AGREEMENT OF SALE

**THIS AGREEMENT**, made this $30$ day of $6$ , 2005, BY AND BETWEEN **Bruce Rickards**, hereinafter referred to as "SELLER" in the masculine gender and singular tense, regardless of the actual gender or tense,

### -AND-

**Tam Van Nguyen, Duc Ngo** and **Tina Ngo**, collectively and individually hereinafter referred to as "PURCHASER" in the masculine gender and singular tense, regardless of the actual gender or tense.

### WITNESSETH:

1. Property. Seller hereby agrees to sell, transfer and convey unto Purchaser, and Purchaser hereby agrees to purchase from Seller for the consideration and upon the terms and conditions hereinafter set forth, the real property known as Sussex County Tax Parcels 5-33-5-42. 37, and 44, (sometimes hereinafter referred to as "the Property").

2. Inclusions/Completion of renovations. (a) The purchase price includes the following items of personal property currently located on the Property: (i) three mobile homes (Purchaser understands that although Seller owns such mobile homes, and is willing to warrant such ownership, Seller does not know the whereabouts of titles to such mobile homes; Purchaser agrees to accept a bill of sale for such mobile homes without actual titles issued by the Delaware Department of Motor Vehicles); (ii) 2 dump trucks; (iii) four pick up trucks; (iv) a tractor; (v) a Case uniloader; (vi) a pressure washer; (vii) a box blade; and (viii) a bushhog.

(b) Prior to settlement, Seller shall complete the following improvements to the Property: (i) complete conversion all chicken houses on the Property to windowless houses; (ii) Build a new manure shed; and (iii) add seven additional cement pads (45' by 45') at the end of houses.

3. Assignment. The Purchaser may assign this contract to a corporation in which the Purchaser is the majority shareholder or to a general or limited partnership where the Purchaser is

1

the managing or general partner without the written consent of the Seller provided a signed copy of such assignment is provided to the Seller and made a part of this Agreement. No assignment to any person, firm or entity shall be valid if the assignee lacks the requisite legal capacity to take title to the premises under the laws of the State of Delaware or to be bound to the performance of all of the terms and conditions of this Agreement. Further, any corporation, trust or partnership desiring to accept an assignment of this Agreement must be legally qualified to transact business and be subject to process under the laws of the State of Delaware. No such assignment shall relieve Purchaser of his obligations under this Agreement.

*B.MB. [handwritten] 5,584,000. [handwritten]*

4.    Purchase Price. The purchase price is the sum of ~~Five Million Six Hundred Fifty Thousand Dollars~~ *5,584,000 five Million five hundred eighty four thousand,* ~~Dollars~~ (~~$5,650,000.00~~), payable as follows:

*134,000. [handwritten]*    (a)    Purchaser shall pay Seller a deposit in the amount of ~~Fifty Thousand~~ Dollars *thousand [handwritten]* ($~~50,000.00~~), concurrently with the execution and delivery of this Agreement, the receipt whereof is hereby acknowledged by Seller.

*B.M.B. [handwritten] TN [handwritten]*    (b)    At settlement, Purchaser shall pay Seller the sum of One Million ~~One Hundred and Fifty Dollars ($1,150,000.00)~~;

(c)    At settlement, Purchaser shall execute and deliver to Seller a promissory note, with a confession of judgment, secured by a first lien position purchase money mortgage against the Property, in the amount of Four Million Four Hundred Fifty Thousand Dollars ($4,450,000.00). Such promissory note shall bear interest at the rate of six percent (6%) per annum and provide for quarterly amortized payments of principal and interest over a period of fifteen (15) years, producing a quarterly payment of principal and interest of One Hundred Thirteen Thousand Dollars and seventy five cents ($113,000.75), as set forth on the attached amortization schedule which is incorporated herein by reference. The note shall provide for an interest only payment for the first quarter following settlement, after which the aforementioned amortization schedule shall take effect.

(d)    The deposit referred to in subparagraph (a) above shall be paid into the trust

2

account of Wilson, Halbrook and Bayard, P.A., where the same shall be held in escrow pending final settlement. The said deposit shall be held in an interest bearing account under the social security number of the Purchaser, with interest to accrue thereon to the benefit of the Purchaser except in the event of default by the Purchaser in which case the interest shall be payable to the Seller along with any other damages provided for in this Agreement. At the time of final settlement, in the absence of any breach or default, the escrow agent shall pay the deposit and any interest thereon over to the settlement attorney who shall be responsible for the distribution thereof in accordance with the usual custom and practice relating to settlement proceeds in Sussex County, Delaware, or upon such other written authorization as may be signed by all of the parties hereto.

(e)    The parties agree that the escrow agent shall receive no fee for its service nor shall the escrow agent be liable for any error of judgment or for any act done or omitted by it in good faith, or for anything which it may in good faith do or refrain from doing in connection therewith. In the event of a dispute or question as to the construction of its directions hereunder, the escrow agent shall deposit all of the escrow funds with a court of competent jurisdiction for ultimate disposition in an interpleader action. No duty or obligation of the escrow agent shall be otherwise imposed upon the escrow agent without the escrow agent's written agreement thereto. The escrow agent's signature on this Agreement shall be effective as to the terms of this numbered paragraph only and shall not obligate the escrow agent to any other duty or obligation, express or implied, arising or to arise from the other terms and conditions of this Agreement.

5.    <u>Deed and Title</u>. Seller shall deliver to Purchaser at settlement, in form satisfactory to Purchaser, a properly executed and acknowledged special warranty deed for the property, conveying a good, marketable, fee simple insurable title, free and clear of all liens and encumbrances, excepting restrictions, utility agreements, easements of records, and use and occupancy restrictions of public record which are generally applicable to properties in the immediate neighborhood or in the subdivision in which the property is located and any other easements which may be observed by an inspection of the property, and zoning regulations which are not violated by any existing

3

improvements on the property, and which bind the property as of the date hereof. In the event title is not a good, marketable fee simple title, free and clear of all liens and encumbrances, as aforesaid, Purchaser may terminate this Agreement and thereupon all payments made by Purchaser pursuant to this contract shall be returned to him forthwith and the parties hereto shall be under no further obligation hereunder.

Seller agrees that his special warranty deed shall reflect the description of the premises as conveyed to the Seller. If the Purchaser shall elect to obtain a survey and desires a conveyance of such described premises as part of final settlement, Seller agrees that he will include in the special warranty deed, a quitclaim transfer of the premises as described in a survey procured by the Purchaser.

6.    Risk of Loss.    Risk of loss or damage to the property by fire, windstorm or other casualty until final settlement shall be upon the Seller. In the event of any such loss or damages, other than loss or damage in an amount not exceeding Five Hundred Dollars ($500.00) which can be repaired before final settlement, Purchaser may cancel this Agreement, and thereupon, all payments made by Purchaser pursuant to this contract, shall be returned to him forthwith and the parties hereto shall be under no further obligation hereunder. Alternatively, if such damage shall exceed Five Hundred Dollars ($500.00) the Purchaser may elect to have the proceeds of such insurance applied toward his obligation recited in paragraph 4(b) provided that he has the consent from his prospective mortgagee to complete settlement on that basis.

7.    Condition of Property.    Except as expressly provided in paragraph 2(b) hereof, Purchaser acknowledges and agrees that Purchaser is acquiring the property in an "AS IS" condition and solely in reliance on Purchaser's own inspection; and that other than as set forth in this Agree-ment, neither the Seller nor any agents, representatives or employees of Seller have made any representations or warranties, express or implied, verbal or written, with respect to any aspect of the property (including, without limitation, the physical condition of the property and the subsurface conditions of the soil and water) or its fitness for any particular use. Seller further acknowledges

4

that Purchaser has investigated and is aware of all governmental requirements and other matters of a similar nature affecting the use and condition of the property and the physical condition of the property (including, but not limited to, subsurface soil and water conditions) and agrees to purchase the property subject to the provisions contained herein, in the condition that it is in at final settlement.

8.    Seller's Warranties.    Seller warrants as follows and agrees that all warranties contained in this Agreement shall be true as of the date of this Agreement and shall continue to be true, effective and binding at the time of settlement:

(a)    Seller holds title to the Property and has authority to enter into this Agreement.

(b)    Seller has not entered into any agreements to sell the Property inconsistent with this Agreement.

(c)    Seller is not aware of any environmental conditions on the Property that could adversely affect the Property, its owners, occupants, or the Property's development.

(d)    For so long as this Agreement continues in effect, Seller shall keep the property in its present physical condition and shall not excavate or commit any waste upon the property.

9.    Possession of the property.    Possession of the property shall be delivered by Seller to Purchaser at the time of final settlement.

10.    Exterminator's Certificate.    At least two (2) weeks prior to final settlement, Purchaser may obtain, at Purchaser's expense, a written report from a licensed exterminating company stating that there is no active infestation of any wood-damaging insects at the time of inspection and/or that there is no damage as a result of any present or prior active infestation of wood-damaging insects at the time of inspection. If an infestation and/or damage is discovered, Seller shall treat and correct the same at Seller's expense. If the Seller shall refuse, the Purchaser may, at his election, agree to accept the property in an "as is" condition or may elect to terminate

5

this Agreement in which case all his deposit monies shall be returned to him and the parties shall be under no further obligation with respect to this Agreement.

11.     Settlement Date. Final settlement shall be completed on or before July 31, 2005, the exact date, place and time of such final settlement to be subject to mutual agreement between the parties hereto. Time is of the essence of this Agreement.

12.     Closing Adjustments. Property and school taxes, water, sewer service charges, fuel oil, and any other charges of an annual and recurrent nature assessed and/or paid, as well as any rental for the property, shall be prorated at the time of settlement. Any state, county, or municipal transfer taxes upon the conveyance of the property shall be paid one-half by Seller and one-half by Purchaser.

13.     Costs. It is mutually agreed by the parties that the Seller shall prepare the deed and that the Purchaser shall pay for all of the other costs of settlement including, but not limited to, title search, title insurance, settlement costs, survey costs, recording and any other related settlement expense not otherwise stated. Each party shall pay for his own respective attorneys' fees.

14.     Purchaser's Default. If Purchaser shall, for some reason not excused hereunder, fail or refuse to perform his obligations to Seller, and Seller shall not also be in default, all monies paid hereunder, including all interest accrued on the escrow account, by Purchaser on account of the purchase price shall be retained by Seller as liquidated damages, and in addition thereto, Seller shall have the right to seek any other remedy and/or to maintain any action against Purchaser to which Seller may be entitled either at law or in equity, including any action for specific performance of this Agreement. As part of the damages in any such action, Seller shall be entitled to the payment of court costs and attorneys' fees.

15.     Seller's Default. If Seller shall, for some reason not excused hereunder, fail or refuse to perform his obligations to Purchaser, and Purchaser shall not also be in default, all monies paid hereunder, including all interest accrued on the escrow account, by Purchaser on account of the purchase price shall be refunded to Purchaser as liquidated damages. Alternatively, Purchaser may

6

refuse to accept the deposit and the interest accrued thereon but shall have the right to seek any other remedy and/or to maintain any action against Seller to which Purchaser may be entitled either at law or in equity, including any action for specific performance of this Agreement. As part of the damages in any such action, Purchaser shall be entitled to the payment of court costs and attorneys' fees.

16.    Mutual Termination. If the parties shall agree to terminate their obligations under this Agreement, and neither party shall be in default of this Agreement, the parties shall so notify the escrow agent in writing and the escrow agent shall distribute the escrowed funds in accordance with the consistent written direction of the Purchaser and Seller and thereafter all rights and obligations hereunder shall be terminated. Each party shall be solely responsible for their own fees or costs incurred to that point and shall indemnify and hold the other harmless for any claim, cause of action or the like arising or to arise from the terms and conditions of this Agreement.

17.    Commissions.

(a)    If either party has, by separate agreement, incurred an obligation to pay a commission to any broker or agent with respect to this Agreement, that party shall be solely responsible for the performance of that agreement and such payment shall be made by the settlement agent at the time of final settlement.

(b)    The parties hereby acknowledge and agree that no commission, finder's fee or the like other than as set forth in paragraph (a) above is payable with regard to the transaction contemplated by this Agreement. Purchaser and Seller (each referred to as "Indemnitor" for purposes of this sub-paragraph) each agree to defend with counsel reasonably satisfactory to the other party and indemnify the other party from and against all liability, claims, demands, damages, or costs of any kind, arising from or connected with any broker's or finder's fee or commission or charge claimed to be due any person arising from the Indemnitor's conduct with respect to this said transaction, other than the commission provided for in sub-paragraph (a) above. This obligation shall survive and be enforceable following the closing or termination of this Agreement.

7

18.    Purchaser's Representation. The Purchaser hereby warrants and represents that the person executing this Agreement as the Purchaser is authorized to do so in her own name, or on behalf of any other person, firm or entity, and that her signature hereto shall be a valid and binding obligation with respect to any person, firm or entity the Purchaser represents if the Purchaser is not the Purchaser in her sole name. This representation shall survive closing and is material and relied upon by the Seller. It is true in all respects as of the date hereof and shall be true as of the date of final settlement except to the extent that the Purchaser obtains knowledge or notice of any fact or facts which would make this representation and warranty untrue or misleading in any respect and makes an appropriate disclosure of such fact or facts to the Seller in writing prior to final settlement.

19.    Governing Law and Venue. This Agreement shall be governed by the laws of the State of Delaware, venue in the State of Delaware, and shall take effect as a sealed instrument.

20.    Headings and Captions. The headings and captions of the paragraphs of this Agreement are for convenience and in no way define, describe or limit the scope or intent of this Agreement or any of the provisions hereof.

BALANCE OF PAGE INTENTIONALLY BLANK

8



21.   Effective Date. This Agreement shall become effective as of the date the last person required to execute this Agreement shall have executed this Agreement.

**IN WITNESS WHEREOF**, the parties have hereunto set their hands and seals.

_____     _____(SEAL)
Witness                     Bruce Rickards

DATE: _____

_____     _____ (SEAL)
Witness                     Tam Van Nguyen

DATE: _____

_____     _____ (SEAL)
Witness                     Duc Ngo

DATE: _6-30-05_

_____     _____ (SEAL)
Witness                     Tina Ngo

DATE: _6.30.05_

\\WHBLAW01\Users\ECHoward\Working Files\Rickards to nguyen agree.DOC

9

| Due Date | Principal | Payment | Principal Payment | Interest Payment |
|---|---|---|---|---|
| 1 01/01/2006 | 4,450,000.00 | 113,000.75 | 46,250.75 | 66,750.00 |
| 2 04/01/2006 | 4,403,749.25 | 113,000.75 | 46,944.51 | 66,056.24 |
| 3 07/01/2006 | 4,356,804.74 | 113,000.75 | 47,648.68 | 65,352.07 |
| 4 10/01/2006 | 4,309,156.06 | 113,000.75 | 48,363.41 | 64,637.34 |
| Totals For 2006 are | | 452,003.00 | 189,207.35 | 262,795.65 |
| 5 01/01/2007 | 4,260,792.65 | 113,000.75 | 49,088.86 | 63,911.89 |
| 6 04/01/2007 | 4,211,703.79 | 113,000.75 | 49,825.19 | 63,175.56 |
| 7 07/01/2007 | 4,161,878.60 | 113,000.75 | 50,572.57 | 62,428.18 |
| 8 10/01/2007 | 4,111,306.03 | 113,000.75 | 51,331.16 | 61,669.59 |
| Totals For 2007 are | | 452,003.00 | 200,817.78 | 251,185.22 |
| 9 01/01/2008 | 4,059,974.87 | 113,000.75 | 52,101.13 | 60,899.62 |
| 10 04/01/2008 | 4,007,873.74 | 113,000.75 | 52,882.64 | 60,118.11 |
| 11 07/01/2008 | 3,954,991.10 | 113,000.75 | 53,675.88 | 59,324.87 |
| 12 10/01/2008 | 3,901,315.22 | 113,000.75 | 54,481.02 | 58,519.73 |
| Totals For 2008 are | | 452,003.00 | 213,140.67 | 238,862.33 |
| 13 01/01/2009 | 3,846,834.20 | 113,000.75 | 55,298.24 | 57,702.51 |
| 14 04/01/2009 | 3,791,535.96 | 113,000.75 | 56,127.71 | 56,873.04 |
| 15 07/01/2009 | 3,735,408.25 | 113,000.75 | 56,969.63 | 56,031.12 |
| 16 10/01/2009 | 3,678,438.62 | 113,000.75 | 57,824.17 | 55,176.58 |
| Totals For 2009 are | | 452,003.00 | 226,219.75 | 225,783.25 |
| 17 01/01/2010 | 3,620,614.45 | 113,000.75 | 58,691.53 | 54,309.22 |
| 18 04/01/2010 | 3,561,922.92 | 113,000.75 | 59,571.91 | 53,428.84 |
| 19 07/01/2010 | 3,502,351.01 | 113,000.75 | 60,465.48 | 52,535.27 |
| 20 10/01/2010 | 3,441,885.53 | 113,000.75 | 61,372.47 | 51,628.28 |
| Totals For 2010 are | | 452,003.00 | 240,101.39 | 211,901.61 |
| 21 01/01/2011 | 3,380,513.06 | 113,000.75 | 62,293.05 | 50,707.70 |
| 22 04/01/2011 | 3,318,220.01 | 113,000.75 | 63,227.45 | 49,773.30 |
| 23 07/01/2011 | 3,254,992.56 | 113,000.75 | 64,175.86 | 48,824.89 |
| 24 10/01/2011 | 3,190,816.70 | 113,000.75 | 65,138.50 | 47,862.25 |
| Totals For 2011 are | | 452,003.00 | 254,834.86 | 197,168.14 |
| 25 01/01/2012 | 3,125,678.20 | 113,000.75 | 66,115.58 | 46,885.17 |
| 26 04/01/2012 | 3,059,562.62 | 113,000.75 | 67,107.31 | 45,893.44 |
| 27 07/01/2012 | 2,992,455.31 | 113,000.75 | 68,113.92 | 44,886.83 |
| 28 10/01/2012 | 2,924,341.39 | 113,000.75 | 69,135.63 | 43,865.12 |
| Totals For 2012 are | | 452,003.00 | 270,472.44 | 181,530.56 |

Loan Amortization Schedule

| No. | Due Date | Principal | Payment | Principal Payment | Interest Payment |
|---|---|---|---|---|---|
| 29 | 01/01/2013 | 2,855,205.76 | 113,000.75 | 70,172.66 | 42,828.09 |
| 30 | 04/01/2013 | 2,785,033.10 | 113,000.75 | 71,225.25 | 41,775.50 |
| 31 | 07/01/2013 | 2,713,807.85 | 113,000.75 | 72,293.63 | 40,707.12 |
| 32 | 10/01/2013 | 2,641,514.22 | 113,000.75 | 73,378.04 | 39,622.71 |
| Totals For 2013 are | | | 452,003.00 | 287,069.58 | 164,933.42 |
| 33 | 01/01/2014 | 2,568,136.18 | 113,000.75 | 74,478.71 | 38,522.04 |
| 34 | 04/01/2014 | 2,493,657.47 | 113,000.75 | 75,595.89 | 37,404.86 |
| 35 | 07/01/2014 | 2,418,061.58 | 113,000.75 | 76,729.83 | 36,270.92 |
| 36 | 10/01/2014 | 2,341,331.75 | 113,000.75 | 77,880.77 | 35,119.98 |
| Totals For 2014 are | | | 452,003.00 | 304,685.20 | 147,317.80 |
| 37 | 01/01/2015 | 2,263,450.98 | 113,000.75 | 79,048.99 | 33,951.76 |
| 38 | 04/01/2015 | 2,184,401.99 | 113,000.75 | 80,234.72 | 32,766.03 |
| 39 | 07/01/2015 | 2,104,167.27 | 113,000.75 | 81,438.24 | 31,562.51 |
| 40 | 10/01/2015 | 2,022,729.03 | 113,000.75 | 82,659.81 | 30,340.94 |
| Totals For 2015 are | | | 452,003.00 | 323,381.76 | 128,621.24 |
| 41 | 01/01/2016 | 1,940,069.22 | 113,000.75 | 83,899.71 | 29,101.04 |
| 42 | 04/01/2016 | 1,856,169.51 | 113,000.75 | 85,158.21 | 27,842.54 |
| 43 | 07/01/2016 | 1,771,011.30 | 113,000.75 | 86,435.58 | 26,565.17 |
| 44 | 10/01/2016 | 1,684,575.72 | 113,000.75 | 87,732.11 | 25,268.64 |
| Totals For 2016 are | | | 452,003.00 | 343,225.61 | 108,777.39 |
| 45 | 01/01/2017 | 1,596,843.61 | 113,000.75 | 89,048.10 | 23,952.65 |
| 46 | 04/01/2017 | 1,507,795.51 | 113,000.75 | 90,383.82 | 22,616.93 |
| 47 | 07/01/2017 | 1,417,411.69 | 113,000.75 | 91,739.57 | 21,261.18 |
| 48 | 10/01/2017 | 1,325,672.12 | 113,000.75 | 93,115.67 | 19,885.08 |
| Totals For 2017 are | | | 452,003.00 | 364,287.16 | 87,715.84 |
| 49 | 01/01/2018 | 1,232,556.45 | 113,000.75 | 94,512.40 | 18,488.35 |
| 50 | 04/01/2018 | 1,138,044.05 | 113,000.75 | 95,930.09 | 17,070.66 |
| 51 | 07/01/2018 | 1,042,113.96 | 113,000.75 | 97,369.04 | 15,631.71 |
| 52 | 10/01/2018 | 944,744.92 | 113,000.75 | 98,829.58 | 14,171.17 |
| Totals For 2018 are | | | 452,003.00 | 386,641.11 | 65,361.89 |
| 53 | 01/01/2019 | 845,915.34 | 113,000.75 | 100,312.02 | 12,688.73 |
| 54 | 04/01/2019 | 745,603.32 | 113,000.75 | 101,816.70 | 11,184.05 |
| 55 | 07/01/2019 | 643,786.62 | 113,000.75 | 103,343.95 | 9,656.80 |
| 56 | 10/01/2019 | 540,442.67 | 113,000.75 | 104,894.11 | 8,106.64 |

| .o. | Due Date | Principal | Payment | Principal Payment | Interest Payment |
|---|---|---|---|---|---|
| Totals For 2019 are | | | 452,003.00 | 410,366.78 | 41,636.22 |
| 57 | 01/01/2020 | 435,548.56 | 113,000.75 | 106,467.52 | 6,533.23 |
| 58 | 04/01/2020 | 329,081.04 | 113,000.75 | 108,064.53 | 4,936.22 |
| 59 | 07/01/2020 | 221,016.51 | 113,000.75 | 109,685.50 | 3,315.25 |
| 60 | 10/01/2020 | 111,331.01 | 113,000.98 | 111,331.01 | 1,669.97 |
| Totals For 2020 are | | | 452,003.23 | 435,548.56 | 16,454.67 |

Wilson, Halbrook & Bayard, P.A.
107 West Market Street
P.O. Box 690
Georgetown, DE 19947
302-856-0015
Prepared: 06/15/2005

| Payments | Payment | Type | INT% | Balance |
|----------|---------|------|------|---------|
| 59 | 113,000.75 | Q | 6.000 | 111,331.01 |
| 1 | 113,000.98 | Q | 6.000 | .00 |

Loan Amount: 4,450,000.00
Total Payments: 6,780,045.23
Finance Charge: 2,330,045.23
First Payment: January 01, 2006
Last Payment: October 01, 2020

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

~ 0 6 – 7 9 9 –

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

BRUCE   M.   RICKARDS,

**(b)** County of Residence of First Listed Plaintiff    SUSSEX
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Eric C. Howard, esq., 107 W. Market
St P.O. Box 690 Georgetown, De. 19947

## DEFENDANTS

EASTERN SHORE CHICKEN FARM LLC,
a limited liability company, of the
State of Delaware;    SUSSEX
County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)    "Pro se,. ....

At, this TIME,. .........

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government
Plaintiff
- ☒ 3  Federal Question
(U.S. Government Not a Party)
- ☐ 2  U.S. Government
Defendant
- ☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff

(For Diversity Cases Only)                and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☐ 1  Original
Proceeding
- ☒ 2  Removed from
State Court
- ☐ 3  Remanded from
Appellate Court
- ☐ 4  Reinstated or
Reopened
- ☐ 5  Transferred from
another district
(specify)
- ☐ 6  Multidistrict
Litigation
- ☐ 7  Appeal to District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Self-executing; 28 U.S.C.A. § 1331.§ 1443. § 1343.

Brief description of cause: "Can't be  guaranteed  a  fair,  Trial,  at  state  level.

## VII. REQUESTED IN
COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☐ Yes    ☐ No

## VIII. RELATED CASE(S)
IF ANY

(See instructions):    Superior-Court of Del, In, & For Sussex – County
JUDGE Hon. Richard F. Stokes    DOCKET NUMBER   06L-11-032RFS

DATE
Dec 28 .06

SIGNATURE OF ATTORNEY OF RECORD

"Pro Se, Attn;
42 U.S.C.A.  § 1988.

## FOR OFFICE USE ONLY

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. ___ 0 6 - 7 9 9 ___

# ACKNOWLEDGMENT
# OF RECEIPT FOR AO FORM 85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF ____1____ COPIES OF AO FORM 85.

Dec-29-06
(Date forms issued)

(Signature of Party or their Representative)

Duc Thanh NGO
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action

OFFICE OF THE CLERK
**UNITED STATES DISTRICT COURT**
DISTRICT OF DELAWARE

Peter T. Dalleo
**CLERK**

LOCKBOX 18
844 KING STREET
U.S. COURTHOUSE
WILMINGTON, DELAWARE 19801
(302) 573-6170

**RE:   C.A.#**  _____ - 0 6 - 7 9 9 - _____

**CASE CAPTION:** _____ v. _____

## ACKNOWLEDGMENT OF RECEIPT FOR F.R.Civ.P. 4

I hereby acknowledge receipt of a copy of Rule 4 (Summons) of the Federal Rules of Civil Procedure, and understand that it is my responsibility to make service of process on defendants in accordance with this rule.

Date Received _____    Signed: _____
by Plaintiff:                                                           Pro Se Plaintiff

Date Received _____    Signed: _____
by Clerk's office:                                                     Deputy Clerk

Note: If you received Federal Rule 4 by mail, please sign this receipt and return it to:

Clerk
U.S. District Court
844 N. King Street
Lockbox 18
Wilmington, DE 19801

If applicable, Rule 4 mailed to plaintiff:

_____
Date mailed

_____
By Deputy Clerk

cc:  Docketing Clerk

wp\forms\rule4receipt 2-04